UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

**DORETTE DEANNA SEDER**,

    Plaintiff,

v.                                                                                      2:23-cv-778-NPM

**COMMISSIONER OF SOCIAL SECURITY**,

    Defendant.

## OPINION AND ORDER

Plaintiff Dorette Deanna Seder seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the proceedings (Doc. 19),[1] Seder filed an opening brief (Doc. 20), the Commissioner responded (Doc. 23), and Seder replied (Doc. 24). For the reasons below, the Commissioner's decision is affirmed.

## I. Eligibility for Disability Benefits and the Administration's Decision

### A. Eligibility

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death or that have lasted or can be expected to last for a continuous period of not less than

---

[1] Cited as "Tr." followed by the appropriate page number.

twelve months.[2] Depending on its nature and severity, an impairment limits exertional abilities like walking or lifting, non-exertional abilities like seeing or hearing, tolerances for workplace conditions like noise or fumes, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[3] And when functional limitations preclude both a return to past work and doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[4]

### B. Factual and procedural history

On September 8, 2020, Seder applied for disability insurance benefits and supplemental security income. (Tr. 410-22). She asserted an alleged onset date of July 11, 2020, alleging disability due to the following: poor circulation, blood clots, fibromyalgia, and Epstein-Barr virus. (Tr. 452). As of the alleged onset date, Seder was 41 years old and had a college education. (Tr. 32, 71). She previously worked as a travel agent, an English teacher, and as an office worker. (Tr. 71-72).

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. §§ 404.1505, 416.905.

[3] *See* 20 C.F.R. §§ 404.1513(a)(2)(i)-(iv) (discussing the various categories of work-related abilities), 416.913(a)(2)(i)(A)-(D) (same), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 416.922(b) (same), 404.1545(b)-(d) (discussing physical, mental, and other abilities that may be affected by an impairment), 416.945(b)-(d) (same), 404.1594(b)(4) (defining functional capacity to do basic work activities), 416.994(b)(1)(iv) (same).

[4] *See* 20 C.F.R. §§ 404.1511, 416.911(a).

On behalf of the administration, a state agency[5] reviewed and denied Seder's application initially on February 5, 2021, and upon reconsideration on September 15, 2021. (Tr. 156-68, 177-89, 193-207). At Seder's request, Administrative Law Judge (ALJ) Ryan Johannes held a hearing and issued an unfavorable decision finding Seder not disabled. (Tr. 130-42). Seder requested review, and the Appeals Council remanded. (Tr. 149-53). ALJ Johannes issued another unfavorable decision on March 6, 2023. (Tr. 14-34). Seder's request for another review by the administration's Appeals Council was denied. (Tr. 1-3). Seder brought the matter to this court, and the case is ripe for judicial review.

## C. The ALJ's decision

The ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform [her] past relevant work; and (5) if not, whether, in light of [her] age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

---

[5] In Florida, a federally funded state agency develops evidence and makes the initial determination whether a claimant is disabled. *See* 42 U.S.C. § 421(a); 20 C.F.R. §§ 404.1503(a), 416.903(a).

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. §§ 404.900(b), 416.1400(b). Unlike judicial proceedings, Social Security Administration hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is relieved of the burden of production during step five as to whether there are enough jobs someone like the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the

process. *See* 20 C.F.R. §§ 404.1512, 416.912 (providing that the claimant must prove disability); *see also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (noting the regulations "place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work"). In short, the "overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant." *Washington*, 906 F.3d at 1359 (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

At step one of the evaluation, the ALJ found Seder had not engaged in substantial gainful activity since July 11, 2020, the alleged onset date. (Tr. 20). At step two, the ALJ characterized Seder's severe impairments as: fibromyalgia, depressive disorder, posttraumatic stress disorder (PTSD), Raynaud's syndrome, positive ANA, and mild lumbar degenerative disc disease. (Tr. 20). At step three, the ALJ determined Seder did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. (Tr. 21).

As a predicate to step four, the ALJ arrived at the following RFC:

> [Seder] is able to occasionally climb stairs and ramps, but never climb ladders and scaffolds; occasionally stoop; never crawl; frequently handle and finger; avoid concentrated exposure vibration and avoid all moving mechanical parts and unprotected heights; understand, remember, and carryout simple, repetitive tasks; can concentrate, attend, and persist on tasks for two-hour periods; occasional interaction with coworkers and supervisors and no interaction with the general public; and in a routine work setting that has only occasional changes in the work routine. (Tr. 25).

Consequently, the ALJ found Seder was unable to perform her past relevant work. (Tr. 31-32). At step five, the ALJ found Seder could perform other work that exists in significant numbers in the national economy. (Tr. 31-32). In support, a vocational expert testified (Tr. 58-64) that an individual of Seder's age, education, work experience, and RFC can perform jobs within the following representative occupations:

- *Mailroom Clerk,* DOT #209.687-026, light, SVP 2, with 56,000 jobs in the national economy;

- *Merchandise Marker,* DOT #219.587-034, light, SVP 2, with 88,000 jobs in the national economy;

- *Garment Sorter*, DOT #222.687-014, light, SVP 2, with 26,000 jobs in the economy.[6]

Thus, for purposes of the Act, the ALJ concluded Seder was not disabled from July 11, 2020, the alleged onset date, through March 6, 2023, the decision date.

## II.  Analysis

Seder's appeal asks whether the ALJ properly evaluated a consultative psychologist's opinion.

---

[6] The DOT numbers refer to the *Dictionary of Occupational Titles* and its explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to the time it takes—during or before a job, such as prior experience or education—to develop necessary abilities, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled.

### A.     Standard of review

The court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). And our review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id.* at 1157. In other words, a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). And if supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

### B. The ALJ properly evaluated the consultative psychologist's opinion.

After the state agency's denial of her claim—both initially and on reconsideration—and before the ALJ hearing, Seder obtained a one-time, consultative opinion from psychologist Sara Malowitz, Psy.D. (Tr. 885-91).[7] And between the ALJ's first and second decisions, the Appeals Counsel directed the ALJ to provide a more fulsome analysis of Malowitz's opinion, which he did. (Tr. 28-31, 140, 151-152). The rub is a checkbox that was left blank. Here's an excerpt of the form (Tr. 890) at issue:

(2) Is ability to interact appropriately with supervisors, co-workers, and the public, as well as respond to changes in routine work setting, affected by the impairment? ☐ No ☑ Yes
If "no", go to question #3. If "yes", please check the appropriate block to describe the individual's restriction for the following work-related mental activities.

| | None | Mild | Moderate | Marked | Extreme |
|---|---|---|---|---|---|
| Interact appropriately with the public. | ☐ | ☐ | ☐ | ☑ | ☐ |
| Interact appropriately with supervisor(s). | ☐ | ☐ | ☑ | ☐ | ☐ |
| Interact appropriately with co-workers. | ☐ | ☐ | ☐ | ☐ | ☐ |
| Respond appropriately to usual work situations and to changes in a routine work setting. | ☐ | ☐ | ☑ | ☐ | ☐ |

Identify the factors (e.g., the particular medical signs, laboratory findings, or other factors described above) that support your assessment.

**Ms. Seder may not be able to interact appropriately with the public, coworkers or supervisors due to the persistent levels of hypervigilance and discomfort she would be likely to experience in a work setting.**

Had Malowitz checked the "Moderate" restriction for "Interact appropriately with co-workers," there would be no grounds for the issue presented. Indeed, Seder's

---

[7] Recall that Seder did not claim in her application that any mental conditions limited her ability to work. (Tr. 452). Moreover, she reported that she had never seen a healthcare professional or received any treatment for any mental condition. (Tr. 455). However, she began seeing a therapist for depression and anxiety when the state agency initially denied her claim. (Tr. 475).

appeal hinges on construing Malowitz's report as opining that Seder has a marked or extreme limitation in this domain of mental functioning.[8] At bottom, Seder argues that based on Malowitz's evaluation and report, the ALJ should have found Seder so limited in her ability to interact with co-workers that she was unable to work and, therefore, disabled for purposes of the Act. But this argument does not withstand scrutiny.

For claims filed on or after March 27, 2017—such as this one—an ALJ must use the same set of factors to assess all medical opinions. *See* 20 C.F.R. §§ 404.1520c, 416.920c. No longer is an ALJ to afford deferential weight to the opinions of any particular source, such as a treating physician. *Id.* As to each medical source, the ALJ must consider: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the two most important factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability refers to "the objective medical

---

[8] To the extent that Malowitz opined that Seder has a marked limitation in her ability to interact appropriately with the public, there is no issue presented because the RFC entirely precludes "interaction with the general public." (Tr. 25). To Seder's benefit, the ALJ incorporated this limitation even though he found that Seder was only moderately limited in her ability to interact with others. (Tr. 23-24).

evidence and supporting explanations presented by a medical source . . . to support his or her" opinion. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Consistency requires "the evidence from other medical sources and nonmedical sources" to be consistent with the medical opinion presented. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). Thus, persuasiveness, rather than weight, matters when assessing a medical opinion. 20 C.F.R. §§ 404.1520c, 404.1527(c), 416.920c, 416.927(c).

In the form at issue, Malowitz offered the following commentary: "Ms. Seder may not be able to interact appropriately with the public, coworkers or supervisors due to the persistent levels of hypervigilance and discomfort she would be likely to experience in a work setting." (Tr. 890). To the extent this statement opined that Seder had anything more than a moderate limitation in her ability to interact with coworkers, the ALJ was unpersuaded. As the ALJ reasoned, such an opinion would be inconsistent with Malowitz's own findings.

For instance, when describing the severity of Seder's limitations in social interaction, Malowitz found that Seder's ability to interact with supervisors was moderately limited, and she likewise found that Seder's ability to respond to usual work situations was moderately limited. In fact, when summarizing Seder's subjective account of her condition, Malowitz stated: "The current level of mental health symptoms would best be described as moderate." (Tr. 886). And when summarizing her entire evaluation, Malowitz concluded: "The mental symptoms

based on report and clinical observations appear to be moderately impacting activities of daily living, vocational performance, and interpersonal interactions." (Tr. 888). These findings of moderate—that is, slight but less than serious—impact on mental function were in line with observations and findings throughout Malowitz's evaluation. She generally observed Seder making good eye contact, displaying a positive attitude, being cooperative, and behaving normally throughout the evaluation. (Tr. 885). And during the mental status exam, Malowitz found that Seder "displayed adequate social skills." (Tr. 887). Her social problem-solving, insight, and mental flexibility were adequate, and she could attend to Malowitz's questions throughout the interview without distraction. *Id*. Thus, the ALJ's rejection on supportability grounds of any opinion by Malowitz of a marked or extreme inability to get along with coworkers was supported by substantial evidence.

The ALJ also reasoned that "stable longitudinal findings on examination and treatment history" were inconsistent with any opinion that Seder had a marked or extreme limitation in her ability to interact with others. And the ALJ cited a raft of evidence. (Tr. 24). By Seder's own account in her handwritten function report, she has no difficulty "getting along with family, friends, neighbors, or others," and none of her illnesses or conditions affect "getting along with others." (Tr. 465). (capitalization omitted). As she explained during her hearing testimony, Seder does not avoid being around people. (Tr. 54). Her use of an anti-depressant is to treat

- 11 -

fibromyalgia and not any mental health condition. (Tr. 52, 76). She is only treated by a therapist rather than a psychiatrist, and she has had no hospitalizations for any mental health problem. (Tr. 77). Accordingly, her treatment records routinely note normal mental status findings, the absence of any mental health conditions, and no complaints about problems with interpersonal interaction. (e.g., Tr. 589-590, 624, 662, 685-686, 733-734, 771-777, 780-781, 846-853, 898-902, 1018, 1057-1058). Thus, the ALJ's rejection on consistency grounds of a disabling inability to get along with coworkers was also supported by substantial evidence.

Seder's critiques are myopic and contrary to the law. She complains that the ALJ did not restate observations made earlier in his decision when explaining his analysis of Malowitz's opinion. But the "regulations do not prevent an ALJ from referring to evidence discussed elsewhere in the decision when evaluating medical opinions." *Moore v. Kijakazi*, No. 8:23-cv-206-AAS, 2023 WL 8187216, *6 (M.D. Fla. Nov. 27, 2023). And the ALJ discussed the stable longitudinal findings on examination and treatment history throughout his decision. (Tr. 23-24, 28, 29).

Seder suggests the ALJ "failed to account for subjective reports as well as the differences between the clinical and work environments." (Doc. 20 at 9). Not so. The ALJ took note of Seder's subjective accounts about her mental functioning. *See*, *e.g.*, Tr. 24 (noting that Seder "sometimes complained of poor or difficult interactions with others"); Tr. 28 (noting Seder's "debilitating allegations of …

interacting"). The ALJ even recounted Seder's subjective report to Malowitz, including her "alleged symptoms of PTSD including … hypervigilance." (Tr. 28). The ALJ also considered Seder's ability to function outside of a clinical environment, including her high activities of daily living, such as homeschooling her daughter, caring for her parents, and going out in public to shop. (Tr. 23-24, 26, 28).

So, contrary to the thrust of Seder's argument, the ALJ put Seder's subjective reports and experiences outside a clinical setting in the balance. Seder merely calls into question the ALJ's credibility determinations and the weight he gave to arguably inconsistent pieces of evidence. Neither of which we may second-guess. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). And to the extent that Seder points to other evidence in the record that may support her allegations, she improperly flips the burden of proof on its head. Under a substantial evidence standard of review, Seder must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion. *See Barnes*, 932 F.2d at 1358. This, she has failed to do.

Finally, the Commissioner generally requires that work restrictions be supported with objective evidence, such as observable signs of impairment during mental status examinations. *See* 20 C.F.R. §§ 416.902(l) ("Psychiatric signs are medically demonstrable phenomena that indicate specific psychological

abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception...."), 404.1502(g) (same), 416.920c(c)(1) (supportive "objective medical evidence" is an important factor when evaluating opinions), 404.1520c(c)(1) (same), 416.929(a) (explaining that ALJs will not rely on a claimant's subjective statements alone, but must weigh them against "all of the other evidence," including objective medical signs and laboratory findings), 404.1529(a) (same). Against that regulatory backdrop, the ALJ is permitted—in fact, required—to consider whether a claimant's symptoms markedly affected her functioning during mental status examinations. And here, they did not. *See*, *e.g.*, Tr. 686, 777, 780-781, 852, 887, 898-902, 1058; *see also Dasher v. Kijakazi*, No. 2:22-cv-204-JRK, 2023 WL 5742703, *3-4 (M.D. Fla. Sept. 6, 2023) (rejecting an identical argument that an ALJ "fails to appreciate the inherently subjective nature of mental disorders," when the ALJ weighs a medical source's comparatively mild findings and other evidence, including the claimant's reported activities, against the claimant's subjective complaints).

### III.   Conclusion

Upon consideration of the submissions of the parties and the administrative record, substantial evidence supports the ALJ's decision, and there was no error in the ALJ's application of the correct legal standard. Accordingly, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and

the clerk of court is directed to enter judgment, terminate any pending motions and scheduled events, and close the case.

**ORDERED** on March 28, 2025

_____
NICHOLAS P. MIZELL
United States Magistrate Judge